GEORGE J. MILLER, APPELLANT, v. THE TRUSTEES OF AND/OR THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, DIVISION OF PENSIONS, DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, DEFENDANTS.

Argued March 21, 1961—Decided May 8, 1961.

*Mr. Harry Schaffer* argued the cause for appellant (*Mr. George J. Miller,* attorney for and of counsel, *pro se*).

*Mr. Lee A. Holley,* Deputy Attorney General, argued the cause for respondent (*Mr. David D. Furman,* Attorney General of New Jersey, attorney).

PER CURIAM. Appellant, George J. Miller, a retired State employee, sought a review under *R. R.* 4:88–8 in the Superior

Court, Appellate Division, of the action of the Trustees of the Public Employees' Retirement System in deducting from his monthly pension benefit the sum "payable to him" under the Federal Social Security Act. The cause was certified on our motion before argument in the Appellate Division.

Miller, a World War I veteran, joined the Public Employees' Retirement System on January 2, 1955. At that time, as a veteran, he was granted 16 years and 3 months free prior service credit. Thereafter, he made the required contributions to the fund until January 1, 1959. The State Retirement System was integrated with the Federal system established to administer the Social Security Act. See *N. J. S. A.* 43:15A-1; 43:15A-84; 42 *U. S. C. A.* § 418. Section 58 of the integration act, *N. J. S. A.* 43:15A-58, provided that prior to January 1, 1960, the social security taxes of the members of the State System should be deducted from their contributions to the State fund. As a result the State System paid Miller's federal taxes until he retired. On January 1, 1959, having accumulated 20 years of creditable service in public employment and being over 60 years of age, on proper application he was retired on a pension allowance of $425. a month. *N. J. S. A.* 43:15A-61.

Section 50 of the act, *N. J. S. A.* 43:15A-50, sets forth the manner in which a pensioner's benefits shall be paid to him. It says:

*"Subject to the provisions of Section 59 of this act,* at the time *of his retirement any member may elect to receive his benefits in a retirement allowance payable throughout life,* or he may on retirement elect to receive the actuarial equivalent at the time of his annuity, his pension or his retirement allowance, in a lesser annuity, or a lesser pension, or a lesser retirement allowance, payable throughout life, with the provision that: * * *." (Emphasis supplied)

Then follows certain optional plans from which a choice may be made as to the method of payment under certain contingencies, such as death or choice of a form of payment not specifically listed as one of the options, but which

is approved by the Board of Trustees. Miller's election under this section was to receive the maximum monthly benefit of $425 payable throughout his life and to cease at his death.

Section 59 referred to in the section just outlined provides:

"Upon attainment of age 65 by a retired member * * * the board of trustees shall reduce such member's retirement allowance by the amount of the old age insurance benefit under Title II of the Social Security Act payable to him. Membership in the retirement system shall presume the member's acceptance of and consent to such reduction. * * *."

Following his retirement the Public Employees' Retirement System paid Miller $425 monthly through January 1960. On January 15, 1960 he became 65 years of age and thus entitled to a monthly benefit of $114 or $116 from the Social Security System. (The State and Federal figures are in conflict. We do not decide the question.) Pursuant to the long-standing administrative interpretation of section 59 that such monthly allowance constituted a benefit "payable to him," the Board of Trustees deducted $116 from its $425 monthly payment beginning February 1, 1960, and has continued to do so ever since.

Miller challenges the right of the Board to make the deduction. He maintains that the language "payable to him" under section 59 of our statute signifies money actually received by him from the Federal system. And he urges that if a person who qualifies as a social security beneficiary does not actually receive the monthly sum allotted to him for some reason specified in the Federal act, there can be no deduction from his State pension.

The alleged factual support for his position must be recited. Under the Social Security Act, 42 *U. S. C. A.* § 403, if a beneficiary under age 72 continues in employment the monthly benefit to which he is entitled is reduced according to a specified formula. If the earnings are sufficiently large,

the deduction will completely offset the payment to which he is entitled. Subsection (*b*) of the cited section says:

"Deductions, in such amounts and at such time or times as the Secretary shall determine, shall be made from any . payment or payments under this subchapter to which an individual is entitled, until the total of such deductions equals such individual's benefit or benefits under section 402 of this title for any month * * *."

Since retirement Miller has been engaged in remunerative work, the income from which under the formula set out in the Social Security Act produced a deduction large enough to equal the monthly benefit to which he was entitled. For that reason the Federal agency has not actually paid the monthly benefit to which he is entitled, which he would have received but for his earnings, and which he will begin to receive at any time his earnings do not warrant the deduction.

We cannot agree with the claim that "payable" in the statute means in fact paid to the pensioner. Such a conclusion would subvert the purpose of the integration of the State and Federal retirement systems. The primary motive of the integration was to provide a monthly allowance for the retired employee—to be made up in part by the State fund and in part by the Federal fund. There is no dispute that Miller is entitled to $425 a month and that he is entitled to $114 or $116 of that amount under the Social Security Act. The fact that he is not receiving the latter benefit because of his present earnings in a private field of endeavor does not mean that it is not payable to him. Any time he ceases to produce the earnings in private employment which warrant the deduction from the social security benefit, the monthly allotment of $116 will not only be payable to him but it will in fact be paid. Miller's continuance in fruitful endeavor is to be commended and not disparaged. But by such voluntary activity he cannot thwart the plain objective of section 59 of the New Jersey statute, and impose a financial burden upon our fund which integra-

tion of the two systems was designed to avoid. The national policy is to declare the right of a qualified citizen to receive a specified monetary benefit; but, if he is able and continues in employment thereafter, the intention is to deduct from that benefit in accordance with a prescribed formula, and thus preserve the fund for those who have no such earnings. On Miller's thesis the burden of payment would be transferred from the Federal domain to the State system. All pensioners situated as he is, by continuing in some gainful pursuit, could defeat completely the underlying motive of the Social Security Act deduction and the purpose of integration of the two systems as well.

No cases have been furnished by the parties which deal with the New Jersey statute or a similar one in any other jurisdiction. *Hurd v. Illinois Bell Telephone Co.*, 136 *F. Supp.* 125 (*D. C. N. D. Ill.* 1955), affirmed 234 *F. 2d* 942 (*7 Cir.* 1956) *certiorari* denied *sub nom. Seybold v. Western Elec. Co.*, 352 *U. S.* 918, 77 *S. Ct.* 216, 1 *L. Ed. 2d* 124 (1956), rehearing denied 352 *U. S.* 977, 77 *S. Ct.* 352, 1 *L. Ed. 2d* 329 (1957), involves an analogous problem arising out of the contractual integration of a private pension plan with the Social Security Act. The company plan offset any benefit which [136 *F. Supp.* 130] "shall be payable" under the Social Security System.

After Hurd was pensioned he obtained employment, the earnings from which created deductions sufficient to equal the benefit to which he was entitled under the Social Security Act. As the result he was paid no statutory benefit. Nevertheless, the company offset the amount of the benefit fixed by the statute against the pension provided by its plan. Hurd's objection to this course was overruled, the District Court pointing out that the company "made the authority to reduce service pensions turn on whether a government pension is 'payable' and not on whether it is actually received." The opinion continued:

"As will appear from the subsequent discussion of Section 8(28), the Social Security Act is written in such a way that as soon as

an individual meets the qualifications for an old-age benefit, he becomes entitled to it regardless of subsequent events. Thus, despite the seeming paradox, the benefit remains payable even though the pensioner will not receive it." 136 *F. Supp.*, at *p.* 151.

See also, *Edmonds v. White*, 35 *Del. Ch.* 367, 118 *A. 2d* 608 (*Ch.* 1955).

We are satisfied from the history of the Public Employees' Retirement-Social Security Integration Act, *L.* 1954, *c.* 84, *N. J. S. A.* 43:15A–1 to 86, and from a study of the act itself that "payable" is not and was not intended to be synonymous with "paid" or "received." See "A Report on the Improvement of the Economic Security Benefit of New Jersey State Employees," November 1953, referred to in the statement attached to the act. In the context "payable" has an essentially different connotation from "paid." It excludes the notion of fulfillment. It is limited to that which has become payable. See, *e. g., In re Coleman's Estate*, 179 *Okla.* 251, 65 *P. 2d* 467 (*Sup. Ct.* 1936). Accordingly, we hold that the Board of Trustees was correct in deducting from Miller's retirement allowance the monthly social security benefit which had become payable to him.

A number of additional problems relating to the construction of other sections of the retirement act have been raised. In our judgment, it is not necessary to discuss them specifically. We find nothing in the various contentions warranting a conclusion that the Board's action was improper.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.